UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GERRY MOBLEY, JR., | : | CIVIL NO:  1:13-CV-00772 |
| | : | |
| Plaintiff | : | |
| | : | (Judge Caldwell) |
| v. | : | |
| | : | (Magistrate Judge Schwab) |
| J. SNYDER, *et al.*, | : | |
| | : | |
| Defendants | : | |

**REPORT AND RECOMMENDATION**

**I.  Introduction.**

This case comes before the court for a statutorily mandated screening review. The plaintiff, Gerry Mobley, Jr., brings a variety of claims against 20 defendants including claims of retaliation for the exercise of his First Amendment rights, Eighth Amendment claims, and due process claims.   More specifically, he claims that some of defendants retaliated against him and refused to provide him with medical care because he told another inmate to file a grievance.   He also claims that some of the defendants violated his rights in connection with disciplinary proceedings and grievance proceedings.   Having reviewed the complaint in accordance with 28 U.S.C. § 1915A, we conclude that the complaint fails to state a claim upon which relief may be granted against the nine defendants that are alleged to have violated Mobley's rights in connection with the disciplinary and grievance proceedings.   We recommend that

Mobley's application for leave to proceed *in forma pauperis* be granted, that the claims against those nine defendants be dismissed without prejudice, and that Mobley granted leave to file an amended complaint.

## II.  Factual Background and Procedural History.

Mobley, a state prisoner proceeding *pro se*, commenced this 42 U.S.C. § 1983 case by filing a complaint and an application for leave to proceed *in forma pauperis.* Mobley names as defendants the following officers and officials of the Pennsylvania Department of Corrections and the State Correctional Institution at Huntingdon: (1) Corrections Officer Snyder; (2) Corrections Officer Fessler; (3) Sergeant Prokop; (4) Corrections Officer John Doe #1; (5) Corrections Officer John Doe #2; (6) Corrections Officer Rhodes; (7) Corrections Officer Nickum; (8) Corrections Officer Booher; (9) Lieutenant Orndorf; (10) Lieutenant Dunkle; (11) Captain Stevens; (12) Captain Altmanshofer; (13) Hearing Examiner Mitchell; (14) Major Walters; (15) Officer Cameron; (16) Deputy Superintendent Eckard; (17) Deputy Superintendent Garman; (18) Chief Secretary of Inmate Grievances and Appeals Varner; (19) Chief Hearing Examiner Lewis; and (20) Superintendent Bickell. Mobley alleges the following in his complaint.

On October 25, 2012, Mobley overhead another inmate—Anthony Earls—complain to defendants Prokop and Fessler that he did not feel safe from his cellmate, and defendants Prokop and Fessler denied Earls's request for a "white hat."[1] As Earls walked past Mobley's cell, Mobley told Earls that Prokop and Fessler cannot deny him a "white hat," that he should file a grievance if he does not feel safe, and that Earls can put him down as a witness. According to Mobley, Earls stated that he was not going to file a grievance but that he was about "to go off on all these mutha fuckers." After defendant Snyder gave Earls a direct order to go to his cell, Earls repeated that he was about to go off. Mobley alleges that defendant Snyder then told defendants Prokop and Fessler about the conversation between Mobley and Earls, and Snyder said that he was putting Earls in the hole and that he should put Mobley in there too.

That same day, around 6:00 p.m., Mobley asserts that he began experiencing chest pains. Breathing heavy and his heart pounding, Mobley called to defendant Snyder and told him that he did not feel well and that his chest hurt. According to Mobley, Snyder responded by stating: "Oh you need me now. Didn't you and your buddy Earls have a lot to say earlier[?]" Mobley alleges that he emphatically reiterated that he needed medical assistance, and Snyder responded by saying that he

---

[1] Mobley does not allege what the term "white hat" means, but from the context it appears that it may mean a supervisory officer.

was not calling anybody and that he would put Mobley in the hole.   According to

Mobley, his chest felt like it was going to explode, and so he sat on his bed and

grabbed his chest.   Defendant Fessler then walked towards Mobley's cell, saw

Mobley holding his chest, and asked Mobley if he was "talking shit."   Mobley

alleges that he was hyperventilating and that he told Fessler that he needed medical

assistance and that he was having chest pains.   According to Mobley, Fessler

ignored him and walked away.   Mobley then overheard Snyder tell defendants John

Doe #1 and John Doe #2 to lock up Mobley's cell.   Mobley told John Doe #1 and

John Doe #2 that he needed medical assistance, but they also ignored him and

walked away.

Shortly thereafter, defendants Dunkle, Rhodes, and Nickum approached

Mobley's cell to take him to the hole.   Mobley stated that he needed medical

assistance because he was having chest pains, but, according to Mobley, these

defendants ignored him as well and removed him from his cell.   As he was going

down the steps escorted by Rhodes, Nickum, and Dunkle, Mobley saw defendants

Prokop, Orndorf, Stevens, Snyder, and Fessler, and he told them that he needed

medical assistance.   Again, the defendants ignored his pleas for help, and defendant

Dunkle threatened to place Mobley in a hard cell, or psychiatric observation cell, if

he did not shut up.

Defendant Dunkle allegedly later told Mobley that he was going to call for medical assistance, but he did not tell the medical staff that Mobley was having chest pains. Instead, he just told the medical staff that, if Mobley gets medicine, they were to bring it. According to Mobley, he was placed in a cold cell with no mattress, no underclothes (just a jumpsuit), no sheets or blanket, or other basic items, and he had to sit on a cold metal desk. Mobley alleges that he could no longer stand the chest pains and that anxiety was getting the best of him, but the defendants continued to ignore his pleas for medical assistance.

At about 7:00 p.m., defendant Booher came to Mobley's cell, and Mobley told him about his chest pains and his need for medical assistance. He also told Booher that he was cold and that he needed underclothes and a mattress because he needed to lay down. Booher responded that the Lieutenant was aware, and then he walked away. Doing half-hour rounds, Booher returned to Mobley's cell at 7:30 p.m. and 8:00 p.m., but both times he ignored Mobley's pleas for medical assistance. At about 8:10 p.m., defendant Booher came to Mobley's cell and delivered two misconduct reports to Mobley. Mobley again asked for medical assistance, and Booher again ignored him. Later, corrections officers provided Mobley with a mattress, and when he asked for medical, they told him that the pill-line nurse was on the way. Several minutes later, Mobly was given underclothes and basic items.

According to Mobley, his chest was still hurting, he had a dull pain in his left armpit, he felt nauseous, he had pain going down his arm and in his jaw, and he felt like an elephant was sitting on his chest.

A registered nurse came to Mobley's cell about twenty minutes later, and Mobley explained his symptoms. An EKG was done, and Mobely was given Nitroglycerin, which did not help. At about 9:00 p.m., Mobley was taken to the hospital, and, according to Mobley, "heart attack preventative care was given," he was monitored, and tests were performed. After several hours at the hospital, Mobley was to taken to SCI-Smithfield's infirmary, where Dr. Long then cleared him to return to the Restricted Housing Unit at SCI-Huntingdon, and on October 26, 2012, at about 11:15 a.m., Mobley returned to SCI-Huntingdon. He was told that he would receive a heart catherization very soon.

Mobley claims that the two misconducts, which were issued by defendants Snyder and Fessler, were false. The first misconduct cited Mobley for threatening an employee and using abusive language, and the second misconduct cited Mobley for using obscene or inappropriate language. Although Mobley admits that he used foul language, he alleges that he never threatened the officers and that the misconducts did not include the fact that he had been denied medical treatment. Mobley alleges that defendant Altmanshofer signed and approved the misconducts,

but he failed to investigate the misconducts. Mobley claims that the misconducts were used to attempt to cover-up the defendants' own misconduct in refusing to provide him with medical assistance. Mobley also claims that the misconducts were falsified in retaliation for his earlier comments that Earls should file a grievance and that he would be a witness for Earls.

On October 30, 2012, Mobley filed a grievance about the denial of medical treatment and his placement in the Restricted Housing Unit. On that same day, Mobley received a disciplinary hearing before defendant Mitchell regarding the misconducts. Although Mobley had requested that certain witnesses be called to corroborate his assertion of a need for medical assistance, defendant Mitchell refused to call the witnesses and stated that Mobley's assertion that he had needed medical assistance was not credible. After Mobley accused him of being corrupt, Mitchell removed Mobley from the hearing and found Mobley guilty of the first misconduct. Mobley also claims that Mitchell then held a hearing *in absentia* on the other misconduct. Mobley received a total of 120 days of disciplinary custody time for both misconducts.

According to Mobley, he appealed the misconduct decisions to defendants Bickell, Walters, Eckard, Garman, Cameron, and Lewis. Mobley further alleges

that defendant Stevens denied his grievance, and defendants Bickell and Varner denied his appeals with respect to his grievance.

Mobley asserts that, although staff at SCI-Huntingdon had told him that all of his tests were normal, after he received his medical charts, he discovered that he suffers from Left Ventricular Hypertrophy and Tricuspid Regurgitation.

Mobley claims that defendants Snyder and Fessler retaliated against him because he had told Earls to file a grievance and that he would be a witness. He also claims that defendants Snyder, Fessler, Propok, John Doe #1, John Doe #2, Dunkle, Rhodes, Nickum, Orndorf, Stevens, and Booher violated the Eighth Amendment by ignoring his pleas for medical assistance. He further claims that defendants Mitchell, Altmanshofer, Walters, Cameron, Eckard, Garman, Bickell, Lewis, and Varner violated his rights in connection with the disciplinary hearings, the investigation of the misconducts, and the appeals of his misconducts and grievance. Mobley is seeking declaratory and injunctive relief as well as compensatory and punitive damages.

## III.  Discussion.

### A.  Screening of *Pro Se* Complaints—Standard of Review.

This Court has a statutory obligation to conduct a preliminary review of *pro se* complaints brought by plaintiffs given leave to proceed *in forma pauperis* in cases that seek redress against government officials.   Specifically, we are obliged to review the complaint pursuant to 28 U.S.C. § 1915A which provides, in pertinent part:

> **(a) Screening.**—The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> **(b) Grounds for dismissal.**—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—
> > **(1)** is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> > **(2)** seeks monetary relief from a defendant who is immune from such relief.

Under Section 1915A, the court must assess whether a *pro se* complaint "fails to state a claim upon which relief may be granted."   This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6).

9

With respect to this benchmark standard for legal sufficiency of a complaint,

the United States Court of Appeals for the Third Circuit has aptly noted the evolving

standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in
> recent years. Beginning with the Supreme Court's opinion in *Bell
> Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d
> 929 (2007), continuing with our opinion in *Phillips [v. County of
> Allegheny,* 515 F.3d 224, 230 (3d Cir.2008)], and culminating recently
> with the Supreme Court's decision in *Ashcroft v. Iqbal* 556 U.S. 662,
> 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), pleading standards have
> seemingly shifted from simple notice pleading to a more heightened
> form of pleading, requiring a plaintiff to plead more than the possibility
> of relief to survive a motion to dismiss.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 209-10 (3d Cir. 2009).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a

'short and plain statement of the claim showing that the pleader is entitled to relief.'"

*Ashcroft v. Iqbal,* 556 U.S. 662, 677-78 (2009).   The statement required by Rule

8(a)(2) must give the defendant fair notice of what the plaintiff's claim is and of the

grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).   Detailed

factual allegations are not required, but more is required than labels, conclusions,

and a formulaic recitation of the elements of a cause of action. *Bell Atlantic Corp. v.

Twombly*, 550 U.S. 544, 555 (2007).   "In other words, a complaint must do more

than allege the plaintiff's entitlement to relief." *Fowler, supra*, 578 F.3d at 211.   "A

complaint has to 'show' such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all well-pleaded factual allegations in the complaint, and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.,* 20 F.3d 1250, 1261 (3d Cir. 1994). A court, however, "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

In conducting a review of the adequacy of a complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal, supra,* 556 U.S. at 679.

Thus, following *Twombly* and *Iqbal,* a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of

11

mere speculation.   In practice, consideration of the legal sufficiency of a complaint

entails a three-step analysis:

> First, the court must 'tak[e] note of the elements a plaintiff must plead
> to state a claim.' Second, the court should identify allegations that,
> 'because they are no more than conclusions, are not entitled to the
> assumption of truth.' Finally, 'where there are well-pleaded factual
> allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement for relief.'

*Santiago v. Warminster Twp.,* 629 F.3d 121, 130 (3d Cir. 2010)(quoting

*Iqbal, supra,* 556 U.S. at 675 & 679).

A complaint filed by a *pro se* litigant is to be liberally construed and

'"however inartfully pleaded, must be held to less stringent standards than formal

pleadings drafted by lawyers.'" *Erickson, supra,* 551 U.S. at 94 (quoting *Estelle v.*

*Gamble,* 429 U.S. 97, 106 (1976)).   Nevertheless, "pro se litigants still must allege

sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina,*

*Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).   Thus, a well-pleaded complaint must

contain more than mere legal labels and conclusions.   Rather, a *pro se* complaint

must recite factual allegations that are sufficient to raise the plaintiff's claimed right

to relief beyond the level of mere speculation, set forth in a "short and plain"

statement of a cause of action.

## B. Mobley's Due Process Claim Fails Because he Did Not Have a Liberty Interest Protected by the Due Process Clause.

Mobley raises a due process claim against defendant Mitchell with respect to his disciplinary proceedings, but he fails to state a due process claim upon which relief may be granted because he has not alleged facts from which it can reasonably be inferred that he had a liberty interest protected under the Due Process Clause.

The Fourteenth Amendment provides that a state shall not "deprive any person of life, liberty, or property, without due process of law." A due process claim requires a two-part analysis. First, the court must determine whether the interest asserted by the plaintiff is within the scope of protection of life, liberty, or property found in the Due Process Clause. *Shoats v. Horn,* 213 F.3d 140, 143 (3d Cir.2000). Second, if the interest is one that is protected by the Due Process Clause, "the question then becomes what process is due to protect it." *Id.*

In *Sandin v. Conner,* 515 U.S. 472 (1995), the United States Supreme Court, addressing the question of when the state can create liberty interests protected by the Due Process Clause, held that:

> States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Id.* at 483-84.   In *Sandin,* the inmate was sentenced to thirty days of disciplinary confinement in the Special Holding Unit.   As a result of the prisoner's disciplinary segregation he "had to spend his entire time alone in his cell (with the exception of 50 minutes each day on average for brief exercise and shower periods, during which he nonetheless remained isolated from other inmates and was constrained by leg irons and waist chains)." *Id.* at 494 (Breyer, J. dissenting).   The Court concluded that the inmate's thirty days in the Special Holding Unit, considered within the context of prison confinement, did not impose the type of atypical and significant deprivation of liberty in which the state could be seen to have created a liberty interest. *Id.* at 486.   The Court noted that disciplinary confinement at the prison in question, with only insignificant exceptions, mirrored conditions imposed on inmates in administrative and protective custody; that based on a comparison of inmates inside of and outside of disciplinary segregation, placement in segregation for thirty days did not work a major disruption in the inmate's environment; that disciplinary action did not inevitably affect the duration of the inmate's sentence; and that the "regime to which [the inmate] was subjected was within the range of confinement to be normally expected for one serving an indeterminate term of 30 years to life." *Id.* at 486–87.

"After *Sandin,* it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" *Wilkinson v. Austin,* 545 U.S. 209, 223 (2005) (quoting *Sandin, supra,* 515 U.S. at 484).   In deciding whether a protected liberty interest exists under *Sandin,* we consider the duration of the confinement and the conditions of that confinement in relation to other prison conditions. *Mitchell v. Horn,* 318 F.3d 523, 532 (3d Cir. 2003). Whether a protected liberty interest exists under *Sandin* requires inquiry into the specific facts of the case. *Id.* at 533.   But "inmates are generally not entitled to procedural due process in prison disciplinary hearings because the sanctions resulting from those hearings do not usually affect a protected liberty interest." *Burns v. Pennsylvania Dept. of Corrections,* 642 F.3d 163, 171 (3d Cir. 2011).

Mobley has not alleged facts from which it can reasonably be inferred that he was subjected to atypical and significant hardships in relation to the ordinary incidents of prison life such that he had a liberty interest protected by the Due Process Clause.   He has not alleged that the disciplinary findings had any effect on the length of his criminal sentence.   While he alleges that he received a total of 120 days of disciplinary custody, that amount of time in disciplinary custody by itself

does not amount to an atypical and significant hardship. *See Smith v. Mensinger,* 293 F.3d 641, 654 (3d Cir. 2002) (holding that seven months of disciplinary confinement not an atypical and significant hardship). Accordingly, the complaint fails to state a due process claim against defendant Mitchell upon which relief may be granted based on the misconduct hearings.

### C. The Supervisory Defendants Cannot Be Liable Based on the Investigation of the Misconducts or the Review of Mobley's Appeals of the Misconducts or Grievance.

The complaint also fails to state a claim upon which relief may be granted against defendants Altmanshofer, Walters, Cameron, Eckard, Garman, Bickell, Lewis, and Varner, supervisory officials whose only alleged involvement in this matter consisted of investigation the misconducts and considering and rejecting Mobley's appeals of the disciplinary decisions and Mobley's grievance.

Liability under Section 1983 "'cannot be predicated solely on the operation of respondeat superior.'" *Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1998)). Thus, a constitutional deprivation cannot be premised merely on the fact that the defendant was a prison supervisor when the incidents set forth in the complaint occurred. *See Alexander v. Forr*, 297 F. App'x 102, 104-05 (3d Cir. 2008). "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each

16

Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009).

There are two viable theories of supervisory liability. *Santiago v. Warminster Twp.*, 129 F.3d, 121, 129 n.5 (3d Cir. 2010).   Under the first theory, a supervisor can be liable if he or she established and maintained a policy, practice, or custom that directly caused the constitutional harm. *Id.*   Under the second theory, a supervisor can be liable if he or she participated in violating the plaintiff's rights, directed others to violate the plaintiff's rights, or as the person in charge had knowledge of and acquiesced in his or her subordinates' violations of the plaintiff's rights. *Id.*

In this case, Mobley's after-the-fact grievance complaining about the denial of medical care is insufficient to establish personal involvement on the part of the supervisory defendants.   Nor can liability rest here based on the fact that the supervisory defendants failed to act favorably upon administrative appeals lodged by Mobley.   Indeed, in the context of appeals of prisoner grievances, it is well settled that a supervisor may not be held liable for civil rights violations based solely upon a failure to grant an inmate's appeal of an adverse decision.   As the United States Court of Appeals for the Third Circuit recently observed when disposing of a similar claim by another inmate:

Several named defendants, such as the Secretaries of the Department of Corrections or Superintendents, were named only for their supervisory roles in the prison system. The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them. *See Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988) (defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior* ); *see also Antonelli v. Sheahan,* 81 F.3d 1422, 1430 (7th Cir. 1996) (state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause).

*Pressley v. Beard,* 266 F. App'x 216, 218 (3d Cir. 2008). Indeed, as to such claims,

the United States Court of Appeals for the Third Circuit has recently held that

summary dismissal is appropriate "because there is no apparent obligation for prison

officials to investigate prison grievances." *Paluch v. Sec'y Pennsylvania Dept.*

*Corr.,* 442 F. App'x 690, 695 (3d Cir. 2011). This principle applies with equal force

to inmate claims leveled against prison supervisors who deny appeals from

disciplinary decisions. *See Hayes v. Walsh,* 3:11–CV–01739, 2012 WL 2462316 at

*4 (M.D.Pa. June 27, 2012) (Caputo, J.)("[S]upervisory review and/or ratification of

disciplinary misconduct determinations generally do not establish the supervisor's

personal involvement in the deprivation of an inmate's constitutional rights.").

Therefore, defendants Altmanshofer, Walters, Cameron, Eckard, Garman, Bickell,

Lewis, and Varner cannot be liable merely because they reviewed and affirmed the

hearing examiner's and/or grievance officer's decisions.

**D. Mobley Should Be Granted Leave to File an Amended Complaint.**

Before dismissing a complaint for failure to state a claim upon which relief may be granted under the screening provisions of 28 U.S.C. § 1915A, the court must grant the plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 114 (3d Cir. 2002). In light of this requirement, although this screening merits analysis calls for dismissal of the claims against defendants Mitchell, Altmanshofer, Walters, Cameron, Eckard, Garman, Bickell, Lewis, and Varner, Mobley should be granted another, final opportunity to state a claim against these defendants by endeavoring to promptly file an amended complaint. Thus, we recommend that the claims against these defendants be dismissed, but we recommend that the dismissal be without prejudice to Mobley filing an amended complaint.

**IV. Recommendations.**

Accordingly, for the foregoing reasons, **IT IS RECOMMENDED** that Mobley's application to proceed *in forma pauperis* be granted. **IT IS FURTHER RECOMMENDED** that the claims against defendants Mitchell, Altmanshofer, Walters, Cameron, Eckard, Garman, Bickell, Lewis, and Varner be dismissed, and

that Mobley be granted leave to file an amended complaint.[2]  **IT IS FURTHER**

**RECOMMENDED** that the case be remanded to the undersigned for further

proceedings either as to the amended complaint, if Mobley files an amended

complaint, or if Mobley does not file an amended complaint, as to the claims against

the remaining 11 defendants in the original complaint that have survived this initial

screening (i.e., the retaliation claims against defendants Snyder and Fessler and the

Eighth Amendment medical-care claims against defendants Snyder, Fessler,

Propok, John Doe #1, John Doe #2, Dunkle, Rhodes, Nickum, Orndorf, Stevens, and

Booher).

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing

2  We note that any amended complaint must be titled as an amended complaint and must contain the docket number of this case.  Any amended complaint must be complete in all respects.  It must be a new pleading which stands by itself as an adequate complaint without reference to the complaint already filed.  Any amended complaint will completely replace the original complaint.  If an amended complaint is filed, the original complaint will have no role in the future litigation of this case. Any amended complaint must also comply with the pleading requirements of the Federal Rules of Civil Procedure.

requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 7th day of June, 2013.

<u>**S/*Susan E. Schwab***</u>
Susan E. Schwab
United States Magistrate Judge