UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GERRY MOBLEY, JR., | : | CIVIL NO: 1:13-CV-00772 |
| | : | |
| Plaintiff | : | |
| | : | (Judge Caldwell) |
| v. | : | |
| | : | (Magistrate Judge Schwab) |
| C.O. SNYDER, *et al.,* | : | |
| | : | |
| Defendants | : | |
| | : | |

## REPORT AND RECOMMENDATION

### I. Introduction.

The plaintiff, Gerry Mobley, Jr., contends that the defendants denied him emergency medical care when he was in acute cardiac distress as retaliation because he told another prisoner to file a grievance and that he would be a witness for him.   Mobley contends that the defendants then tried to cover up their wrongdoing by issuing him false misconducts.  The defendants have moved to dismiss the claims against them in their official capacities.  One of the defendants also moves to dismiss Mobley's failure-to-train and failure-to-supervise claim against him.  For the reasons set forth below, we recommend that the defendants' partial motion to dismiss the amended complaint be granted.

## II.  Background and Procedural History.

Mobley, a state prisoner proceeding *pro se*, commenced this 42 U.S.C.

§ 1983 case by filing a complaint and an application for leave to proceed *in forma*

*pauperis.*  Although Mobley is currently incarcerated at the State Correctional

Institution at Green, he is complaining about events that happened at the State

Correctional Institution at Huntingdon (SCI-Huntingdon).  After screening the

complaint in accordance with 28 U.S.C. 1915A, the Court determined that the

complaint failed to state a claim upon which relief can be granted against nine of

the twenty defendants named in the complaint.  The Court dismissed those

defendants without prejudice and granted Mobley leave to file an amended

complaint.

In August of 2013, Mobley filed an amended complaint naming as

defendants the following officers and officials of SCI-Huntingdon: (1) Corrections

Officer Snyder; (2) Corrections Officer Fessler; (3) Sergeant Prokop;

(4) Corrections Officer Means;[1] (5) Corrections Officer Weakland;[2]

(6) Corrections Officer Rhodes; (7) Corrections Officer Nickum; (8) Corrections

Officer Booher; (9) Lieutenant Orndorf; (10) Lieutenant Dunkle; (11) Captain

---

[1] Although Mobley initially identified this defendant as John Doe #1, he later
identified him as Officer Means.
[2] Although Mobley initially identified this defendant as John Doe #2, he later
identified him as Officer Weakland.

Stevens; (12) John/Jane Doe #3; (13) John/Jane Doe #4; and (14) Superintendent Bickell.  Mobley alleges the following in his amended complaint.

On October 22, 2012, Mobley visited a cardiologist at J.C. Blair Memorial Hospital.  On October 25, 2012, Mobley was seen by the medical staff at SCI-Huntingdon for ongoing chest pains, rapid heartbeat, shortness of breath, and as a follow up to his visit a few days earlier to the cardiologist.  Later on October 25th, Mobley overhead another inmate—Anthony Earls—express concerns to defendants Prokop and Fessler about having to share a cell with a particular inmate.  Although Earls requested to talk to a "white hat," *i.e.,* a lieutenant, Prokop and Fessler denied his request and ordered Earls to return to his cell.  As Earls walked past Mobley's cell, Mobley told Earls that Prokop and Fessler cannot deny him a "white hat," that he should file a grievance if he does not feel safe with his cellmate, and that Earls can put him down as a witness to the fact that he had asked Prokop and Fessler to speak with a "white hat."  According to Mobley, he and Earls continued to talk and Earls expressed his frustration.  Defendant Snyder overheard their conversation and ordered Earls to his cell.  After Earls directed his frustration at Snyder, Snyder ordered him to "have a seat on center," which was an indication that Earls would be placed in the Restricted Housing Unit (RHU), also known as the hole, because of a disciplinary infraction.  Mobley alleges that defendant Snyder then told defendants Prokop and Fessler that he would file a

misconduct report against Earls and that should put "that mutha' fucker Mobley in the hole too." Mobley then told Snyder to keep him out of it, to which Snyder responded: "You was up there running your mouth. You keep running your mouth and you can join Earls on center."

That same day, around 6:00 p.m., Mobley asserts that he began experiencing cardiac symptoms. According to Mobley, he had tightness and sharp pains in his chest, his heart was pounding, he was light headed, and he was breathing heavy. Mobley called to defendant Snyder and told him that he did not feel well and that his chest hurt. According to Mobley, Snyder responded by stating: "Oh you need me now. Didn't you and your buddy Earls have a lot to say earlier[?]" Mobley alleges that he emphatically reiterated that he needed medical assistance, and Snyder responded by saying that he was not calling anybody and that he would put Mobley in the hole. According to Mobley, Snyder then walked away without summoning help.

A short time later, Mobley heard Snyder falsely tell defendants Onrdorf, Stevens, Dunkle, Rhodes, Nickum, Fessler, and Prokop that Mobley had threatened him. Thereafter, defendant Dunkle ordered Mobley to "cuff up," and defendants Dunkle, Rhodes and Nickum escorted him to the RHU. Mobley details his numerous requests for medical assistance, and he alleges that defendants Fessler,

Means, Weakland, Dunkle, Rhodes, Nickum, Prokop, Orndorf, Stevens, and Snyder ignored his requests.

According to Mobley, defendant Dunkle threatened to place Mobley in a hard cell, or psychiatric observation cell, if he did not shut up. Although defendant Dunkle called the medical department once Mobley arrived in the RHU, he did not tell the medical staff that Mobley was having chest pains. Instead, he just told the medical staff that, if Mobley gets medicine, they were to bring it. According to Mobley, he was placed in a cold cell without basic items and with no mattress and no underclothes (just a jumpsuit and shoes). Mobley again repeatedly pleaded for medical assistance, and again, he alleges, defendants Rhodes, Nickum, and Booher ignored his pleas.

Later, defendant Booher delivered to Mobley two misconduct reports from defendants Snyder, Fessler, Prokop, Orndorf, and Stevens. According to Mobley, the misconduct reports were fabricated and gave a false account of what had transpired. Mobley contends that the defendants issued the misconduct reports to attempt to cover-up their own misconduct in refusing to provide him with medical assistance. Mobley also contends that the defendants falsified the misconducts in retaliation for his earlier comments that Earls should file a grievance and that he would be a witness for Earls.

Mobley continued to ask for medical assistance, and Booher again ignored

him.  Later, a corrections officer provided Mobley with a mattress, and when

Mobley asked for medical assistance, the officer told him that the pill-line nurse

was coming soon.  A short time later, Mobley was given underclothes and basic

items.  According to Mobley, his chest was still hurting, he had a dull pain in his

left arm and armpit, he felt nauseous, he had pain going down his arm and in his

face and jaw, and everytime he tried to sit up or move it felt like his chest was

going to explode.

Finally, sometime after 8:30 p.m., a nurse came to Mobley's cell and noticed

his condition.  An EKG was done, and Mobely was given Nitroglycerin.  At about

9:15 p.m., Mobley was taken to the hospital, and, according to Mobley, he was

given heart attack and preventative care.  The next day, Mobley was returned to

SCI-Huntingdon.

According to Mobley, he "suffered a heart attack or serious heart damage"

on October 25, 2012, between 6:00 p.m. and 9:30 p.m.  Mobley alleges that his

need for medical assistance at the time was plain enough to be readily recognized

by defendants Snyder, Fessler, Means, Weakland, Prokop, Dunkle, Rhodes,

Nickum, Orndorf, Stevens, and Booher.  Mobley alleges that as the result of the

lack of medical treatment, he suffered intense physical pain as well as emotional

distress.  He alleges that two months later he discovered that he suffers from Left

Ventricular Hypertrophy and Tricuspid Regurgitation.  According to Mobley, both conditions are a result of high blood pressure, heart attack, and heart injury. Mobley contends that his heart disease was aggravated by the delay in treating his cardiac distress on October 25, 2012, and he will experience diminished health for the rest of his life as a result of the delay.  Further, although he did not need Nitroglycerin before then, since October 25, 2012, Mobley has been placed permanently on Nitroglycerin for ongoing chest pains and heart disease. According to Mobley, he continues to suffer emotional trauma and symptoms of heart failure as a result of the callous manner in which the defendants denied him medical care.  Mobley also alleges that his ability to earn a living and his quality of life have been diminished.

On October 30, 2012, Mobley filed a grievance about the alleged denial of medical treatment and the alleged retaliation that he suffered.  Defendant Stevens responded to the grievance, and in an attempt to cover up his own misconduct and the misconduct of others, Stevens falsely stated that Mobley never requested medical care.

Although there is substantial overlap between some of Mobley's claims, he presents 13 counts in his amended complaint.  Count One is claim for retaliation against defendants Snyder, Fessler, and Prokop for denying him medical care, for falsifying misconducts, and for placing him in the RHU.  Count Two is an Eighth

Amendment medical claim against defendants Snyder, Fessler, Prokop, Means, Weakland, Dunkle, Rhodes, Nickum, Orndorf, and Stevens.  Count Three is also an Eighth Amendment medical claim, and it appears to be the same as Count Two except that it is against defendant Booher as well as the defendants named in Count Two.  Count Four is an Eighth Amendment claim against defendant Snyder for placing Mobley in the RHU as well as a claim against defendants Fessler, Prokop, Means, Weakland, Ornforf, Dunkle, Rhodes, Nickum, Booher, and Stevens for failing to intervene and get Mobley emergency medical care and, it appears, by acquiescing in defendant Snyder's placement of Mobley in the RHU.  Count Five is an Eighth Amendment claim against defendants Dunkle, Rhodes, Nickum, Snyder, Fessler, Prokop, Orndorf, Stevens, Means, and Weakland based on Mobley's placement in handcuffs and placement in the RHU as well as an Eighth Amendment claim against Dunkle, Rhodes, Nickum, and Booher for his confinement for hours in a cold cell with no socks, no underclothes, and no mattress.  Count Six contains an Eighth Amendment claim and a retaliation claim against defendant Snyder for falsification of a misconduct report to cover up his purported wrongdoing.  Count Seven is an Eighth Amendment claim against defendants Fessler, Prokop, Orndorf, Snyder, and Stevens for falsification of a misconduct to cover up purported wrongdoing.  Count Eight is a conspiracy claim under 42 U.S.C. § 1983 against defendants Stevens, Dunkle, Prokop, Snyder, and

Fessler for falsifying misconducts and using the grievance system to cover up wrong doing.  Count Nine is an Eighth Amendment failure-to-train and failure-to-supervise claim against defendants Stevens and Bickell for failure to train officer regarding providing prisoners access to medical care.  Count Ten is a failure-to-screen and failure-to-train claim against John/Jane Does #3 and #4.  Count Eleven is a claim against defendants Snyder, Fessler, Prokop, Means, Weakland, Orndorf, Stevens, Dunkle, Rhodes, Nickum, and Booher for refusal to perform duties imposed by Pennsylvania statutes, the Pennsylvania Code, and Department of Corrections polices.  Count Twelve is an Intentional Infliction of Emotional Distress claim against defendants Snyder, Fessler, Prokop, Means, Weakland, Orndorf, Stevens, Dunkle, Rhodes, Nickum, Booher, and Bickell.  And Count Thirteen is a defamation claim against defendants Snyder, Fessler, Prokop, Orndorf, Stevens, Dunkle, and Bickell.  Mobley is seeking declaratory and injunctive relief as well as compensatory and punitive damages.

The defendants filed a partial motion to dismiss the amended complaint and a brief in support of that motion contending that the claims against them in their official capacities should be dismissed and that the failure-to-train and failure-to-supervise claim against defendant Bickell should be dismissed.  The partial motion to dismiss is ripe, and for the reasons discussed below, we recommend that it be granted.

## III. Discussion.

### A. Motion to Dismiss and Pleading Standards.

In accordance with Fed.R.Civ.P. 12(b)(6), the court may dismiss a complaint for "failure to state a claim upon which relief can be granted." When reviewing a motion to dismiss, "[w]e must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). In making that determination, we "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

"A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a)." *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 769-70 (M.D. Pa. 2012). "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677-78 (2009). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the plaintiff's claim is and of the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Detailed factual allegations are not required, but more is required than labels, conclusions, and a formulaic

10

recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). "A complaint has to "show" such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief can be granted, the court must accept as true all well-pleaded factual allegations in the complaint, and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.,* 20 F.3d 1250, 1261 (3d Cir. 1994). A court, however, "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

Following *Twombly* and *Iqbal,* a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must 'tak[e] note of the elements a plaintiff must
> plead to state a claim.' Second, the court should identify

> allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'  Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Santiago v. Warminster Tp.,* 629 F.3d 121, 130 (3d Cir. 2010)(quoting *Iqbal,* 556 U.S. at 675 & 679).

A complaint filed by a *pro se* litigant is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson,* 551 U.S. at 94 (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)).  Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).  Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a *pro se* complaint must recite factual allegations that are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

**B.  The Claims Against the Defendants in Their Official Capacities Should Be Dismissed.**

The defendants contend that the claims against them in their official capacities should be dismissed.  Official-capacity suits are "only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New*

*York City Dept. of Social Services,* 436 U.S. 658, 690, n. 55 (1978).  In an official-capacity suit, the entity of which the officer is an agent is the real party in interest. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  As such, claims against state officials in their official capacities for damages are treated as suits against the state and are barred by the Eleventh Amendment. *Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 318 (3d Cir. 2013).

The defendants in this case are state officials.  Thus, any claim for monetary damages against them in their official capacities is barred by the Eleventh Amendment.  Mobley concedes as much, but he argues that his claims for injunctive relief are not barred by the Eleventh Amendment.  In his amended complaint, Mobley seeks injunctive relief in the form of an order that while he is in the custody of the Department of Corrections he must receive appropriate and continuing medical care and he must not be incarcerated in a facility where any of the defendants are employed.  While claims against state officers in their official capacity for prospective injunctive relief are not barred by the Eleventh Amendment, "remedies are limited to those that are 'designed to end a continuing violation of federal law.'" *Christ the King Manor, Inc.,* 730 F.3d at 318 (quoting *Green v. Mansour,* 474 U.S. 64, 68 (1985)).  In this case, Mobley's claims for injunctive relief are moot.

13

Article III of the Constitution provides that the judicial power of the United States shall extend to "cases" and "controversies." U.S. Constitution, art. III, §2. "[F]ederal courts may adjudicate only actual, ongoing cases or controversies," *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990), and "[i]t is a basic principle of Article III that a justiciable case or controversy must remain 'extant at all stages of review, not merely at the time the complaint is filed.'" *United States v. Juvenile Male*, 131 S. Ct. 2860, 2864 (2011)(quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997)). "Federal courts may not 'decide questions that cannot affect the rights of litigants in the case before them' or give 'opinion[s] advising what the law would be upon a hypothetical state of facts.'" *Chafin v. Chafin*, 133 S. Ct. 1017, 1023 (2013)(quoting *Lewis,* 494 U.S. at 477). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726-27 (2013)(quoting *Murphy v. Hunt,* 455 U.S. 478, 481 (1982)). Generally, an inmate's transfer from the facility complained of moots claims for equitable and declaratory relief. *Sutton v. Rahseed,* 323 F.3d 236, 248 (3d Cir. 2003); *Johnson v. Wenerowicz,* 440 F. App'x. 60, 62 (3d Cir. 2011) (holding that the prisoner's request for injunctive and declaratory relief against the named defendants was rendered moot by his transfer to another prison).

14

Here, since Mobley is no longer incarcerated at SCI-Huntingdon, his claims for declaratory and injunctive relief are moot.  He does not allege that he is not currently receiving medical care at SCI-Green, his current place of incarceration, or that any of the defendants are employed at SCI-Green.  As such, he has not alleged a continuing violation of federal law.  Moreover, there are no allegations in the amended complaint that reasonably support an inference that any of the named defendants, who are officers and officials at SCI-Huntingdon, have any authority to provide the injunctive relief that Mobley seeks now that Mobley is no longer incarcerated at SCI-Huntingdon.  As Mobley's claims for injunctive relief are moot, we recommend that those claims be dismissed.

### C.  The Failure-to-Train and Failure-to- Supervise Claim Against Defendant Bickell Should Be Dismissed.

Mobley alleges that defendant Bickell failed to adequately train and supervise corrections officers, including the other defendants, to ensure that they understood and complied with statutory and regulatory provisions regarding summoning emergency medical assistance for prisoners, regarding not falsifying records, and regarding the proper use of restraints.  This lack of training and supervision, Mobley alleges, directly caused the other defendants to deny him medical assistance for over two-and-a-half hours on October 25, 2012, and caused him to be handcuffed while he was in acute cardiac distress.  Defendant Bickell

15

contends that the amended complaint fails to state a failure-to-train and failure-to-supervise claim against him upon which relief can be granted.

As the Court made clear in connection with review of Mobley's original complaint, liability under Section 1983 "'cannot be predicated solely on the operation of respondeat superior.'" *Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1998)).  Thus, a constitutional deprivation cannot be premised merely on the fact that the defendant was a prison supervisor when the incidents set forth in the complaint occurred. *See Alexander v. Forr*, 297 F. App'x 102, 104-05 (3d Cir. 2008). "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009).  There are two viable theories of supervisory liability. *Santiago v. Warminster Twp.*, 129 F.3d, 121, 129 n.5 (3d Cir. 2010).  Under the first theory, a supervisor can be liable if he or she established and maintained a policy, practice, or custom that directly caused the constitutional harm. *Id.*  Under the second theory, a supervisor can be liable if he or she participated in violating the plaintiff's rights, directed others to violate the plaintiff's rights, or as the person in charge had

knowledge of and acquiesced in his or her subordinates' violations of the plaintiff's rights. *Id.*[3]

In this case, Mobley does not allege that Bickell participated in denying him medical care on October 25, 2012, issuing false misconducts, placing him in restraints, or placing him in the RHU.  Nor does he allege that Bickell directed the other defendants to take the actions that they took.  He also does not allege that at the time of the actions of the other defendants on October 25, 2012, Bickell had knowledge of those actions and acquiesced in the other defendants' actions.  In fact, Mobley concedes that Bickell did not have knowledge of the events until after the fact: he alleges that Bickell was put on notice on October 30, 2012 and November 10, 2012, of the falsified misconduct reports, and Bickell was put on notice on November 5, 2012, of the denial of emergency medical care.  Bickell's after-the-fact knowledge of the alleged incident is insufficient to establish personal involvement on his part.

Mobley alleges in a conclusory manner that in connection with his misconduct and grievance appeals, Bickell conspired with defendants Snyder,

---

[3] Numerous courts have expressed uncertainty as to the continued viability and scope of supervisory liability following *Iqbal*. *Santiago,* 629 F.3d at 130 n.8 (citing cases).  But since *Iqbal* did not clearly overrule Third Circuit law on supervisory liability, we are bound to follow that law unless or until the Third Circuit rules otherwise.

Fessler, Prokop, Orndorf, Stevens, and Dunkle to cover up the denial of medical care and retaliation against him. According to Mobley, Bickell learned through the grievance and misconduct appeals that Mobley had been denied emergency medical care, that he suffered acute cardiac distress, and that he was retaliated against by being denied medical care, by being placed in the RHU, by being issued false misconduct reports all because he told Inmate Earls to file a grievance and put him down as a witness. According to Mobley, Bickell knew prior to December 5, 2012, that defendant Stevens improperly responded to his grievance that concerned in part Stevens's own actions. Bickell allegedly encouraged and acquiesced in a pattern, custom, and practice of his subordinates falsifying misconduct reports and answering grievances filed against them to cover up their own misconduct. Even after learning that Stevens answered the grievance against himself, Bickell failed to correct the wrongdoing of his subordinates. According to Mobley, Bickell acquiesced in and sanctioned the illegal custom and practice of violation of DOC policies and allowed the violations to go uncorrected. Mobley also alleges that Bickell ignored the violations committed by his subordinates and allowed them to go unpunished.

Liability in this case may not be based on the fact that Bickell failed to act favorably upon administrative appeals lodged by Mobley. Indeed, in the context of appeals of prisoner grievances, it is well settled that a supervisor may not be held

liable for civil rights violations based solely upon a failure to grant an inmate's

appeal of an adverse decision.  As the United States Court of Appeals for the Third

Circuit observed when disposing of a similar claim by another inmate:

> Several named defendants, such as the Secretaries of the
> Department of Corrections or Superintendents, were named
> only for their supervisory roles in the prison system.  The
> District Court properly dismissed these defendants and any
> additional defendants who were sued based on their failure to
> take corrective action when grievances or investigations were
> referred to them. *See Rode v. Dellarciprete,* 845 F.2d 1195,
> 1207 (3d Cir. 1988) (defendant in a civil rights action must
> have personal involvement in the alleged wrongs; liability
> cannot be predicated solely on the operation of *respondeat
> superior* ); *see also Antonelli v. Sheahan,* 81 F.3d 1422, 1430
> (7th Cir. 1996) (state's inmate grievance procedures do not give
> rise to a liberty interest protected by the Due Process Clause).

*Pressley v. Beard,* 266 F. App'x 216, 218 (3d Cir. 2008).  Indeed, as to such

claims, the United States Court of Appeals for the Third Circuit has held that

summary dismissal is appropriate "because there is no apparent obligation for

prison officials to investigate prison grievances." *Paluch v. Sec'y Pennsylvania

Dept. Corr.,* 442 F. App'x 690, 695 (3d Cir. 2011).  This principle applies with

equal force to inmate claims leveled against prison supervisors who deny appeals

from disciplinary decisions. *See Hayes v. Walsh,* 3:11–CV–01739, 2012 WL

2462316 at *4 (M.D.Pa. June 27, 2012) (Caputo, J.)("[S]upervisory review and/or

ratification of disciplinary misconduct determinations generally do not establish

the supervisor's personal involvement in the deprivation of an inmate's

constitutional rights."). Therefore, defendant Bickell cannot be liable merely because he reviewed and affirmed the hearing examiner's and grievance officer's decisions.

Finally, Mobley has failed to allege facts reasonably supporting a failure-to-train claim or a failure-to-supervise claim. To hold a supervisor liable because his or her policies or practices led to a constitutional violation, the plaintiff must identify a specific policy or practice that the supervisor failed to employ and must allege facts from which it can reasonably be inferred that: (1) the existing policy or practice created an unreasonable risk of constitutional injury; (2) the supervisor was aware of that risk; (3) the supervisor was deliberately indifferent to that risk; and (4) constitutional injury resulted from the policy or practice. *Beers–Capitol v. Whetzel,* 256 F.3d 120, 134 (3d Cir. 2001). "[O]ne way—perhaps the easiest way—a plaintiff can make out a supervisor liability claim is by showing that 'the supervisory official failed to respond appropriately in the face of an awareness of a pattern of such injuries.'" *Id.* (quoting *Sample v. Diecks,* 885 F.2d 1099, 1118 (1989)). Usually, "an unreasonable risk in a supervisory liability case will be shown by evidence that such harm has in fact occurred on numerous occasions." *Sample,* 885 F.2d at 1118. "But that is not the only way to make out such a claim, as 'there are situations in which the risk of constitutionally cognizable harm is so great and so obvious that the risk and the failure of supervisory officials to respond

20

will alone support findings of the existence of an unreasonable risk, of knowledge

of that unreasonable risk, and of indifference to it.'" *Beers–Capitol,* 256 F.3d at

134 (quoting *Sample,* 885 F.2d at 1118).  It is not enough, however, for a plaintiff

to allege that his constitutional rights would not have been violated if the

supervisory defendant had done more than he or she did. *Sample,* 885 F.2d at 1118.

Instead, the plaintiff must specifically identify what the defendant failed to do that

evidences his or her deliberate indifference. *Id.*  "Only in the context of a specific

defalcation on the part of the supervisory official can the court assess whether the

official's conduct evidenced deliberate indifference and whether there is a close

causal relationship between the 'identified deficiency' and the 'ultimate injury.'"

*Id.*

   While Mobley has alleged that defendant Bickell encouraged and acquiesced

in a pattern, custom, and practice of his subordinates falsifying misconduct reports

and answering grievances filed against them to cover up their own misconduct and

that Bickell acquiesced and sanctioned the illegal custom and practice of violation

of DOC polies and allowed the violations to go uncorrected, he has not pleaded

facts supporting those allegations.  And nothing about how Bickell handled

Mobley's administrative appeals after the events in this case leads to an inference

that there was a risk that his subordinates on October 25, 2012, would deny an

inmate emergency medical treatment, would issue false misconducts, would

21

improperly use restraints, or would improperly place an inmate in the RHU.

Moreover, even if there was such a risk, Bickell's handling of Mobley's after-the-fact administrative appeals does not lead to an inference that the Bickell was deliberately indifferent to any such risk.  Because the assumption of truth is inapplicable to legal conclusions or to "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements," *Iqbal,* 556 U.S. at 678, Mobley's failure-to-train and failure-to-supervise claims against Superintendent Bickell should be dismissed.

### D.  Leave to Amend.

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny,* 515 F.3d 224, 245 (3d Cir. 2008).  In this case, although Mobley has previously been given leave to amend he has still failed to state a failure-to-train claim or a failure-to-supervise claim against Bickell upon which relief can be granted.  Under these circumstances, further leave to amend would be futile.

## IV.  Recommendations.

Accordingly, for the foregoing reasons, it is recommended that the motion (doc. 34) to dismiss the amended complaint be granted and that the claims against the defendants in their official capacities be dismissed and that the failure-to-train and failure-to-supervise claim against defendant Bickell be dismissed.[4]  It is further recommended that Mobley's claims for injunctive relief be dismissed as moot. Finally, it is recommended that the case be remanded to the undersigned for further proceedings.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive

---

[4]  Bickell has not moved to dismiss the intentional infliction of emotional distress claim or the defamation claim against him.  Thus, we do not address those claims.

further evidence, recall witnesses or recommit the matter to the
magistrate judge with instructions.

Submitted this 16th day of June, 2014.

**_S/Susan E. Schwab_**
Susan E. Schwab
United States Magistrate Judge
